UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NATALIE H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01983-SEB-MG |
| | ) |
| FRANK J. BISIGNANO Commissioner of the Social Security Administration,[1] | ) ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

On February 4, 2022, Plaintiff Natalie H.[2] filed an application for supplemental security income alleging a disability beginning on January 23, 2020. Following denials at the initial and reconsideration levels, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Filing No. 7-2 at 17.] A hearing was held on July 2, 2024, before the ALJ. [Filing No. 7-2 at 17.] On July 8, 2024, the ALJ issued a decision denying Plaintiff benefits and on September 17, 2024, the Appeals Council denied Plaintiff's request for review. [Filing No. 7-2 at 1, 30.] Plaintiff timely sought review from this Court. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that the ALJ's decision be **REVERSED and REMANDED**.

**I.   Legal Standard**

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit.

[2] To protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security review opinions.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standard, and that substantial evidence exists for the ALJ's decision. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)). In creating a logical bridge, the ALJ must meet the "minimal articulation requirement" when making the decision. *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) ("An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning."); *see Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (explaining the court reviews the ALJ's decision holistically).

## II.  Factual Background

The ALJ's decision finding Plaintiff not disabled followed the required five step evaluation process in in 20 C.F.R. § 404.1520. Specifically, the ALJ found:

- At Step One, that Plaintiff "ha[d] not engaged in substantial gainful activity since February 4, 2022, the application date."

- At Step Two, that Plaintiff "ha[d] the following severe impairments: anxiety, depression, post- traumatic stress disorder ("PTSD"), and opioid use disorder (20 CFR 416.920(c))."

- At Step Three, that Plaintiff "d[id] not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."

- At Step Three but before Step Four, that Plaintiff "ha[d] the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except never climbing of climbing ladders, ropes or scaffolds; no exposure to unprotected heights or hazardous machinery; she is able to understand, carry out, and remember detailed, but not complex tasks; she can attend to tasks for a sufficient time to complete detailed tasks; she can manage occasional changes and the stress involved in detailed tasks; she can manage occasional contact with the public, but sustained, intensive, interpersonal contact is precluded; she would work best on individual tasks or as part of a small group; she cannot work at production rate pace or meet strict quota production requirements, but she can meet all end-of-day goals."

- At Step Four, that Plaintiff "ha[d] no past relevant work (20 CFR 416.965)."

- And at Step Five, the ALJ concluded that, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

[Filing No. 7-2 at 19, 20, 22, 23, 29.]

### III.   Discussion

Plaintiff argues the ALJ erred in three ways: (1) he failed to evaluate Plaintiff's migraines, (2) he failed to adequately address Plaintiff's psychological symptoms and their impact on her daily functioning, and (3) he erroneously applied SSR 16-3p.

####   A.   Migraines

Plaintiff argues the ALJ improperly evaluated evidence of her migraines by impermissibly relying on objective medical and neurological testing. At minimum, Plaintiff argues, the ALJ should have considered Plaintiff's headaches as a non-severe impairment when formulating her RFC. In response, the Commissioner asserts that the ALJ did not rely solely on Plaintiff's "normal" neurological exams, but considered the minimal documented evidence of Plaintiff's headaches and concluded it did not align with Plaintiff's subjective account of her symptoms.

At Step Two, the ALJ determined that Plaintiff had the following severe impairments: anxiety, depression, PTSD, and opioid use disorder. [Filing No. 7-2 at 19.] Plaintiff takes issue with the ALJ's reliance on her "normal" neurological tests to support his Step Two conclusion. According to Plaintiff, the "absence of documented abnormalities or neurological deficits . . . does not detract from [Plaintiff's] allegations about her migraines." [Filing No. 10 at 12.] That is true: While "MRIs [can be used] to rule out other possible causes of headache—such as a tumor," an unremarkable MRI "is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d

4

718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014) (reversing the district court's denial of disability benefits where the ALJ relied on the claimants "unremarkable" MRI as evidence that her headaches were not a significant issue).

In his assessment of Plaintiff's headaches at Step Two, the ALJ cited a string of Plaintiff's hearing statements, including that: (1) she intended on talking to her doctor about her headaches, (2) she had not been able to take medication while pregnant, (3) she had headaches five or six times a week, and (4) that medication did not fully resolve her headaches. [Filing No. 7-2 at 20–21.] Also notable was Plaintiff's testimony that she "had migraines all her life but never sought treatment for them." [Filing No. 7-2 at 20.] The ALJ then turned to a neurological examination, which "ha[d] been normal[,]" as well as a medical consultative examination, where Plaintiff had "alleged disability based, in part, on headaches[.]" [Filing No. 7-2 at 20.] Again, the ALJ noted, Plaintiffs "neurological signs were normal[.]" [Filing No. 7-2 at 20.] During his RFC assessment, the ALJ cited Plaintiff's report that she experienced headaches five or six times a week and that Tylenol did not fully resolve her symptoms. [Filing No. 7-2 at 29.] In the next sentence, the ALJ again referenced Plaintiff's "unremarkable" neurological examinations. [Filing No. 7-2 at 29.]

Because the Court is recommending that this case be remanded on other grounds, it need not decide whether the ALJ's references to Plaintiff's "normal" neurological signs amount to reversible error. That said, an ALJ's demonstrated reliance on "normal" neurological tests when evaluating a claimant's migraine headaches has consistently proven problematic. *See Chelsie E. v. Kijakazi*, No. 1:23-cv-455, 2023 WL 8731964, at *6 (S.D. Ind. Dec. 19, 2023), *report and recommendation adopted*, No. 1:23-cv-455, 2024 WL 37093 (S.D. Ind. Jan. 3, 2024) (finding that the ALJ errored by using the plaintiff's normal CT scan as evidence contradicting he testimony concerning the frequency and severity of her migraines); *Patryas v. Saul*, No. 2:19-cv-256, 2020

WL 4364339, at *3 (N.D. Ind. July 30, 2020) (finding that the ALJ errored by relying on an MRI to conclude that the plaintiff was not experiencing symptoms or functional limitations due to her migraines). On remand, the ALJ should avoid using Plaintiff's "normal" neurological signs to discount her statements concerning the severity and frequency of her migraine headaches.

### B. Psychological Symptoms

Next, Plaintiff asserts the ALJ failed to adequately address her psychological symptoms and their impact on her daily functioning. At Step Two, the ALJ found that Plaintiff had severe mental impairments, including anxiety, depression, and PTSD. [Filing No. 7-2 at 19.] At Step Three but before Step Four, the ALJ made the following findings:

> "the [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except never climbing of climbing ladders, ropes or scaffolds; no exposure to unprotected heights or hazardous machinery; she is able to understand, carry out, and remember detailed, but not complex tasks; she can attend to tasks for a sufficient time to complete detailed tasks; she can manage occasional changes and the stress involved in detailed tasks; she can manage occasional contact with the public, but sustained, intensive, interpersonal contact is precluded; she would work best on individual tasks or as part of a small group; she cannot work at production rate pace or meet strict quota production requirements, but she can meet all end-of-day goals."

[Filing No. 7-2 at 22–23.] At issue here is whether the ALJ built a logical bridge between his RFC assessment and the evidence.

The Court will begin with Plaintiff's argument that the ALJ included no limitations for concentration, persistence, and pace despite finding a moderate limitation in that area. [*See* Filing No. 7-2 at 21.] According to Plaintiff, the RFC assessment failed to accommodate Plaintiff's moderate limitation in concentration, persistence, and pace, and the ALJ did not justify this omission with citations to medical evidence. The Commissioner counters that it was reasonable for the ALJ to adopt the opinions of two state-agency psychological consultants on the issue of concentration, persistence, and pace, and that

6

Plaintiff fails to cite medical evidence that she was more limited than the ALJ assessed. The parties arguments largely concern the following section of the RFC assessment: Plaintiff "is able to understand, carry out, and remember detailed, but not complex tasks; she can attend to tasks for a sufficient time to complete detailed tasks; she can manage occasional changes and the stress involved in detailed tasks . . . she cannot work at production rate pace or meet strict quota production requirements, but she can meet all end-of-day goals[.]" [Filing No. 7-2 at 22–23.]

In his RFC analysis, the ALJ discussed the medical opinions of Dr. Michele Koselke and Dr. Luella Bangura. [Filing No. 7-2 at 28.] As it related to concentration and persistence, Dr. Koselke concluded that Plaintiff "ha[d] some difficulty sustaining concentration[] and persisting in work-related activities at a reasonable pace due to interference of psychiatric symptoms." [Filing No. 7-7 at 41.] The ALJ partially disagreed with Dr. Koselke's assessment and described the psychological examination as "unremarkable with good attention and no evidence of excessive distractibility[.]" [Filing No. 7-2 at 28.] He also explained that Dr. Koselke's opinions were not fully supported by the examination, not entirely consistent with other evidence in the record, and were not functionally specific. [Filing No. 7-2 at 28]; [*See* Filing No. 7-7 at 41] (concluding that Plaintiff had "some difficulty sustaining concentration and persisting in work-related activities at a reasonable pace due to interference of psychiatric symptoms" but not suggesting functional limitations based on her difficulty with concentration, persistence, and pace). Similar to Dr. Koselke, Dr. Bangura opined that Plaintiff "show[ed] difficulty with sustained concentration . . . [and] persistence." [Filing No. 7-7 at 45.] In assessing this opinion, the ALJ sated he was not fully persuaded by Dr. Bangura's findings because Plaintiff's psychological symptoms were "outside [Dr. Bangura's] expertise" and, like Dr. Koselke, Dr. Bangura was not functionally specific with

7

respect to Plaintiff's precise work abilities. [Filing No. 7-2 at 28.] The ALJ properly articulated his reasons for being "somewhat, but not fully, persua[ded] by Dr. Koselke and Dr. Bangura's medical opinions. [Filing No. 7-2 at 28]; *See* S.S.R. 96-8p (when there is a conflict between an RFC assessment and a medical opinion, an ALJ must explain why a medical opinion was not adopted).

      As highlighted by the Commissioner, the ALJ gave considerable weight to the opinions of two state-agency psychological consultants, Dr. Amy Johnson and Dr. Maura Clark. [*See* Filing No. 12 at 1.] In the "Mental Residual Functional Capacity" subsection of a disability determination document, Dr. Johnson selected "yes" in response to the question, "[d]oes the individual have sustained concentration and persistence limitations?" [Filing No. 7-2 at 75.] Dr. Johnson was then prompted to rate Plaintiff for each category under "Sustained Concertation and Persistence Limitation." [Filing No. 7-2 at 76.] Dr. Johnson marked six of the eight categories as "Not Significantly Limited." [Filing No. 7-2 at 76.] The two remaining categories were: (1) "[t]he ability to maintain attention and concentration for extended periods," and (2) "[t]he ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[.]" [Filing No. 7-2 at 76.] For these two categories, Dr. Johnson rated Plaintiff as "Moderately Limited." [Filing No. 7-2 at 76.] The second state-agency psychological consultant, Dr. Clark, also selected "yes" in response to the question "[d]oes the individual have sustained concentration and persistence limitations?" [Filing No. 7-2 at 86.] Like Dr. Johnson, Dr. Clark rated Plaintiff as "Not Significantly Limited" for six of the eight categories under "Sustained Concentration and Persistence Limitation." [Filing No. 7-2 at 85.] Again, Plaintiff was rated "Moderately Limited" for the two remaining categories: (1) "[t]he ability to maintain attention and concentration for extended periods," and (2) "[t]he ability to complete a normal workday and workweek without

8

interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods[.]" [Filing No. 7-2 at 85.]. The ALJ adopted the following restrictions assessed by both state-agency consultants: "[Plaintiff] can understand, remember, and carry out detailed, but not complex tasks . . . [Plaintiff] can attend to tasks for a sufficient period to complete tasks . . . [and] can manage the stresses involved with detailed work-related tasks." [Filing No. 7-2 at 76; 86.]

This case has pertinent factual parallels to *Kathy H. v. Kijakazi*, No. 1:20-cv-2721, 2022 WL 855005 (S.D. Ind. Mar. 22, 2022). In *Kathy H.*, the state-agency consultants rated the plaintiff as "moderately limited in completing a workday or workweek without psychologically based symptoms and in working at a consistent pace without an unreasonable number and length of rest periods." *Id*. at *6. The ALJ in *Kathy H.* found the state consultants' opinions to be persuasive and adopted their mental limitations in the RFC. *Id*. at *6. Although the RFC addressed some of the limitations in the area of concentration, the ALJ did not account for the moderate time-off task limitations that were reflected in the consultants' checkboxes. *Id*. The plaintiff challenged this omission, and the Court agreed that medical evidence, including worksheet observations, cannot just be ignored. *Id*. While an ALJ "may reasonably rely on a state agency consultant's narrative 'when it is in fact consistent with' the consultant's checklist ratings[,]" in *Kathy H.*, the "state psychologists' narratives [were] inconsistent with the checkbox moderate limitation for time off task because the narrative ma[de] no mention of any limitations in that area." *Id*. at *7. Ultimately, the ALJ "could have articulated why she did not find the time-off-task limitation [] appropriate with citation to medical evidence . . . [but] did not do so." *Id*.

Here, the ALJ failed to address the inconsistencies between the consultants' narrative findings and checkbox findings. To begin, both consultants rated Plaintiff as "Moderately Limited"

9

in her ability to maintain attention and concentration for extended periods. [Filing No. 7-2 at 76, 85.] In their narratives, both consultants concluded that Plaintiff could carry out detailed tasks and attend to tasks for a sufficient time to complete them. [Filing No. 7-2 at 76, 86.] While an ALJ can reasonably rely on narrative findings when they are consistent with checkbox findings, here, the consultants' narrative findings, which were incorporated into the RFC, failed to address their checkbox finding that Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods. *See Donald G. v. Kijakazi*, No. 3:21-cv-164, 2023 WL 2957448, at *9 (S.D. Ind. Feb. 16, 2023), *report and recommendation adopted*, No. 3:21-cv-164, 2023 WL 2643238 (S.D. Ind. Mar. 27, 2023) (narrative finding that Plaintiff could carry out complex tasks and attend to tasks for a sufficient period to complete them was inconsistent with checkbox moderate limitation in maintaining attention and concentration for extended periods). For example, while the narratives state that Plaintiff "can attend to tasks for a sufficient period to complete tasks," neither narrative suggests what kind of tasks are to be considered or defines a "sufficient period" for their completion. At no point in his decision did the ALJ address this inconsistency or otherwise articulate why he did not find corresponding limitations appropriate with citation to medical evidence.

In his response brief, the Commissioner likens this case to *Pavlicek v. Saul*, 994 F.3d 777 (7th Cir. 2021). There, the Seventh Circuit concluded that a moderate limitation in concentration, persistence, and pace, "seem[ed] consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Pavlicek*, 994 F.3d at 783. But the Commissioner's summary of *Pavlicek* omits critical context—there, an agency consultant articulated that the plaintiff "could pay attention *up to two hours at a time*, and could perform at a consistent pace 'particularly if [] engaged in [] simple repetitive tasks.'" *Id*. at 780 (emphases added). These layered limitations clearly distinguish

10

the narrative in *Pavlicek* from the narratives at issue in this case. *See Holiday v. O'Malley*, No. 2:23-cv-302, 2024 WL 2860088, at *4 (N.D. Ind. June 5, 2024) (distinguishing *Pavlicek* where agency consultants "provided no comparable analysis" of the plaintiff's ability to concentrate and their narrative RFC recommendations did not adequately account for her limitation in maintaining concentration and attention).

    The RFC also includes one limitation not mentioned by either consultant in their respective narratives: "[Plaintiff] cannot work at production rate pace or meet strict quota production requirements, but she can meet all end-of-day goals." [Filing No. 7-2 at 23.] It seems the ALJ may have included the foregoing limitation to account for the consultants' checkbox moderate limitation for time off task. But that much is unclear, as the ALJ did not articulate his reasoning for including this limitation, how it may have accounted for the limitation for time off task, or whether there was medical evidence to support that Plaintiff could meet end-of-day requirements. *See Novak v. Berryhill*, No. 15-cv-50236, 2017 WL 1163733, at *7 (N.D. Ill. Mar. 29, 2017) (limitation that prohibited "fast-paced" or "strict" quotas but concluding that Plaintiff could meet end-of-day requirements was vague and unsupported by any medical opinion). Thus, "the temporal vagueness in the narrative remains problematic in view of [the consultants'] checkbox assessment that [Plaintiff] has a moderate limitation in completing a normal workday and workweek without interruptions, as well as performing at a consistent pace without an unreasonable number and length of rest periods." *Monday v. Comm'r of Soc. Sec.*, No. 4:23-cv-96, 2025 WL 865146, at *6 (N.D. Ind. Mar. 20, 2025).

    Although the consultants did not address the checkbox limitation in the narrative portion of their assessments, the ALJ was obligated to account for or explain the checkbox limitation and its inconsistency with the consultants' narratives. *See Spry v. Kijakazi*, No. 3:20-cv-742, 2022 WL

11

101335, at *3 (N.D. Ind. Jan. 11, 2022) ("Remand is appropriate so that the ALJ can reconsider Dr. Lovko's checkbox limitations and either include the limitations in the residual functional capacity and hypotheticals, or fully explain why it's proper to exclude Dr. Lovko's checkbox limitations."); *cf. Baldwin v. Berryhill*, 746 F. App'x 580, 584 (7th Cir. 2018) (ALJ did not err by ignoring a psychological evaluation indicating that the plaintiff was moderately limited in concentration and pace because the psychologist explained in that same report that the plaintiff had the concentration and pace "necessary to fulfill a normal workday"). By failing to address evidence of Plaintiff's moderate limitations in concentration, persistence, and pace, the ALJ failed to build a logical bridge between the evidence and the result. On remand, the ALJ should consider whether the checkbox limitations are consistent with the state agency consultants' narratives and if inconsistent, either include limitations in the RFC and hypotheticals or explain the reasoning for excluding the checkbox limitations.

Because the Court is recommending that this case be remanded, it need not address Plaintiff's remaining arguments, though she may raise those arguments before the ALJ.

For all these reasons, the Magistrate Judge recommends that the Court **REVERSE and REMAND** the ALJ's opinion pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 4th day of February 2026.

Date: 2/4/2026

                                                  Mario Garcia
                                                  United States Magistrate Judge
                                                  Southern District of Indiana

Distribution:
To ECF Counsel of Record